## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENNAN HUDSON, derivatively on behalf of DUTCH BROS INC., <br><br>     Plaintiff, <br><br>     v. <br><br> JONATHAN RICCI, CHARLES L. JEMLEY, TRAVIS BOERSMA, SHELLEY BROADER, THOMAS DAVIS, CHARLES ESSERMAN, KATHRYN GEORGE, STEPHEN GILLETT, and BLYTHE JACK, <br><br>     Defendants, <br><br>     and <br><br> DUTCH BROS INC., <br><br>     Nominal Defendant. | Case No.: <br><br><br> **DEMAND FOR JURY TRIAL** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff Brennan Hudson ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of Nominal Defendant Dutch Bros Inc. ("Dutch Bros" or the "Company"), files this Verified Shareholder Derivative Complaint against Jonathan "Joth" Ricci ("Ricci"), Charles L. Jemley ("Jemley"), Travis Boersma ("Boersma"), Shelley Broader ("Broader"), Thomas Davis ("Davis"), Charles Esserman ("Esserman"), Kathryn George ("George"), Stephen Gillett ("Gillett"), and Blythe Jack ("Jack") (collectively, the "Individual Defendants," and together

with Dutch Bros, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Dutch Bros, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and for contribution under Sections 10(b) and 21D of the Exchange Act. As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by the Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Dutch Bros, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.     This is a shareholder derivative action that seeks to remedy wrongdoing committed by the Individual Defendants from March 1, 2022, to May 11, 2022 (the "Relevant Period").

2.     Dutch Bros is a Delaware corporation based in Oregon that operates and franchises drive-thru coffee shops and distributes and sells coffee and coffee-related products. Dutch Bros represents that as of March 31, 2022, it had a total of 572 shops in operation throughout 12 U.S. states, 310 of which were company-operated and 262 of which were franchised.

3.      On March 1, 2022, the Company hosted a conference call to discuss its financial results for the fourth quarter and full year 2021. During the call, Defendant Ricci, the Company's Chief Executive Officer ("CEO"), and Defendant Jemley, the Company's Chief Financial Officer ("CFO"), made various statements emphasizing to Dutch Bros investors that the Company's first quarter 2022 results would be positive and that its margins were healthy. Indeed, during the call, Defendant Ricci represented that, while the Company was "not immune to margin pressures," it was "managing it appropriately" and was "feeling good as [it] enter[ed] '22 with the trajectory of [its] margins, given everything going on." Similarly, Defendant Jemley stated that "we're just not feeling compression in margins."

4.      However, after the market closed on May 11, 2022, Dutch Bros issued a press release wherein it announced poor financial results for the first quarter of 2022. In the press release, Dutch Bros reported a net loss of $16.3 million, compared to a net loss of $4.8 million for the first quarter of 2021. Dutch Bros also reported a $2.5 million adjusted net loss (a loss of $0.02 per share), which fell below the Street's estimated earnings of $0.01 per share.

5.      Also on May 11, 2022, Dutch Bros hosted a conference call to discuss the Company's results for the first quarter of 2022. During the call, Defendant Ricci pointed to the Company's poor margins to explain its poor performance, stating:

> [M]argin pressure on our company shops led to a lower adjusted EBITDA result than we expected. That margin pressure was primarily a result of these factors: our decision to be disciplined on the price we took, which we believe is less than half as much as many of our peers; faster inflation and cost of goods, especially in dairy; the pull forward of deferred expenses related to the maintenance of shops; and normal new store inefficiency amplified by the volume of new and ramping units in quarter 1.

6.      Defendant Ricci also noted that the Company "did not perceive the speed and magnitude of cost escalation within the quarter," explaining that dairy, which makes up "28% of

[the Company's] commodity basket, rose almost 25%" in the first quarter of 2022.

7.      On this news, the Company's share price fell $9.26, or 26.9%, from a closing price of $34.37 on May 11, 2022 to close at $25.11 per share on May 12, 2022.

8.      During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, *inter alia*, that: (1) the Company's costs and expenses were increasing, including those of dairy; (2) as a result, Dutch Bros was experiencing increased margin pressure and decreased profitability in the first quarter of 2022; and (3) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

9.      The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct these false and misleading statements and omissions of material fact, while, during the Relevant Period, two of the Individual Defendants sold Company shares at inflated prices.

10.      Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

11.      In light of the Individual Defendants' misconduct—which has subjected the Company, its CEO, and its CFO, to a federal securities fraud class action lawsuit pending in the United States District Court for the Southern District of New York (the "Securities Class Action") and which has further subjected the Company to the need to undertake internal

investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend many millions of dollars.

12.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

13.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, of the collective engagement in fraud and misconduct by the Company's directors, of the substantial likelihood of the directors' liability in this derivative action, of the CEO's and CFO's liability in the Securities Class Action, and of their not being disinterested and/or independent directors, a majority of the Company's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9), Section 10(b) of the Exchange Act (15. U.S.C. § 78j(b)), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

15.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

17.     Venue is proper in this District because the alleged misstatements and wrongs complained of herein entered this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

18.     Plaintiff is a current shareholder of Dutch Bros. Plaintiff has continuously held Dutch Bros common stock at all relevant times.

### Nominal Defendant Dutch Bros

19.     Dutch Bros is a Delaware corporation with its principal executive offices at 110 SW 4th Street, Grants Pass, Oregon 97526. Dutch Bros' shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "BROS."

### Defendant Ricci

20.     Defendant Ricci is CEO of the Company and has served as a Company director since August 2021. He previously served as President of the Company from August 2021 to February 2023. According to the proxy statement that the Company filed with the SEC on April 3, 2023 (the "2023 Proxy Statement"), as of March 21, 2023, Defendant Ricci beneficially owned 2,293,865 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on March 21, 2023 was $29.45, Defendant Ricci owned approximately $67.6 million worth of Dutch Bros stock.

21.     For the fiscal year ended December 31, 2022 (the "2022 Fiscal Year"), Defendant Ricci received $1,114,060 in total compensation from the Company. This included

$550,000 in salary, $500,000 in bonus, and $64,060 in all other compensation.

22.     During the Relevant Period, while the Company's stock price was artificially inflated and before the scheme was exposed, Defendant Ricci made the following sales of Company stock:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| March 7, 2022 | 71,125 | $46.08 | $3,277,368 |
| May 9, 2022 | 71,125 | $43.09 | $3,064,420 |

Thus, in total, before the fraud was exposed, he sold 142,250 shares of Company stock on inside information, for which he received approximately $6.3 million in proceeds. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in scheme.

23.     The 2023 Proxy Statement stated the following about Defendant Ricci:

Mr. Ricci has served as our Chief Executive Officer and a member of our board of directors since August 2021, our President from August 2021 to February 2023, the Chief Executive Officer of Dutch Bros OpCo since February 2021, and the President of Dutch Bros OpCo from January 2019 to February 2023. Since January 2020, Mr. Ricci has served as Chairman of the board of directors of Dutch Bros Foundation, our philanthropic arm. From April 2017 to January 2019, he served as President and Chief Executive Officer of Adelsheim Vineyard. From February 2013 to April 2017, Mr. Ricci served as President of Stumptown Coffee Roasters, a coffee company. In addition to his senior management experience, Mr. Ricci has served on various boards of directors in the beverage industry and civic organizations since January 2012. Mr. Ricci received a B.S. in Business Education from Oregon State University. We believe Mr. Ricci's leadership experience and knowledge of our industry make him an appropriate member of our Board.

**Defendant Jemley**

24.     Defendant Jemley has served as the Company's CFO since January 2020. According to the 2023 Proxy Statement, as of March 21, 2023, Defendant Jemley beneficially owned 1,167,032 shares of the Company's common stock. Given that the price per share of the

Company's common stock at the close of trading on March 21, 2023 was $29.45, Defendant Jemley owned approximately $34.4 million worth of Dutch Bros stock.

25.    For the 2022 Fiscal Year, Defendant Jemley received $723,333 in total compensation from the Company. This included $472,500 in salary, $225,000 in bonus, and $25,833 in all other compensation.

26.    During the Relevant Period, while the Company's stock price was artificially inflated and before the scheme was exposed, Defendant Jemley made the following sales of Company stock:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| March 15, 2022 | 15,000 | $48.61 | $729,105 |
| April 5, 2022 | 5,000 | $55.45 | $277,240 |

Thus, in total, before the fraud was exposed, he sold 20,000 shares of Company stock on inside information, for which he received approximately $1,006,345 in proceeds. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in scheme.

27.    The Company's website states the following about Defendant Jemley:

Mr. Jemley is the Chief Financial Officer of Dutch Bros Coffee and has over 30 years of restaurant finance and restaurant real estate development experience. Prior to joining Dutch Bros in January 2020, he had a 16 year career at Yum Brands, a 12 year career at Starbucks Coffee Company, and served as Chief Financial Officer for CKE Restaurants from 2018 to 2020. Mr. Jemley earned a Bachelor of Science in Accounting from the University of Louisville and an MBA from the University of Washington.

**Defendant Boersma**

28.    Defendant Boersma co-founded the Company and has served as Executive Chairman of its Board since August 2021. According to the 2023 Proxy Statement, as of March 21, 2023, Defendant Boersma and his affiliated entities beneficially owned 129,423,699 shares

of the Company's common stock, representing 48.0% of the Company's outstanding shares, thus making Defendant Boersma a controlling shareholder of the Company. Given that the price per share of the Company's common stock at the close of trading on March 21, 2023 was $29.45, Defendant Boersma owned approximately $3.8 billion worth of Dutch Bros stock.

29.     For the 2022 Fiscal Year, Defendant Boersma received $1,508,989 in total compensation from the Company. This included $1,500,000 in salary and $8,989 in all other compensation.

30.     The 2023 Proxy Statement stated the following about Defendant Boersma:

Mr. Boersma is our Co-Founder and has served as our Executive Chairman since August 2021 and as the Executive Chairman of Dutch Bros OpCo since February 2021. Prior to serving as our Executive Chairman, he served as the Chief Executive Officer of Dutch Bros OpCo from February 2019 to February 2021. Mr. Boersma has led us as Co-Founder since 1992. Mr. Boersma attended Southern Oregon University. We believe that Mr. Boersma's experience as our co-Founder and his industry knowledge, as well as his leadership experience, make him an appropriate member of our Board.

**Defendant Broader**

31.     Defendant Broader has served as a Company director since August 2021. Defendant Broader also serves as Chair of the Audit and Risk Committee. According to the 2023 Proxy Statement, as of March 21, 2023, Defendant Broader beneficially owned 5,601 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on March 21, 2023 was $29.45, Defendant Broader owned approximately $164,949 worth of Dutch Bros stock.

32.     For the 2022 Fiscal Year, Defendant Broader received $184,174 in total compensation from the Company. This included $84,190 in fees earned or paid in cash and $99,984 in stock awards.

33.     The 2023 Proxy Statement stated the following about Defendant Broader:

Ms. Broader has served as a member of our Board since August 2021. Ms. Broader served as Chief Executive Officer and President of Chico's FAS, Inc., a fashion retailer, from December 2015 to April 2019. Prior to this, Ms. Broader served as Executive Vice President at Walmart Inc. (NYSE: WMT), a multinational retail company, from 2009 to November 2015 in various executive roles, including as President and Chief Executive Officer of the Walmart Europe, Middle East, and Sub-Saharan Africa region from July 2014 to October 2015, President and Chief Executive Officer of Walmart Canada Corp. from September 2011 to May 2014, Chief Merchandising Officer of Walmart Canada Corp. from 2010 to 2011, and Senior Vice President for Sam's Club (a division of Walmart) from 2009 to 2010. In addition, Ms. Broader served as President and Chief Operating Officer for Michaels Stores, Inc. from 2008 to 2009, President and Chief Operating Officer for Sweetbay Supermarket from 2003 to 2008, and Senior Vice President and in various executive roles for Hannaford Bros Co. from 1991 to 2003. Ms. Broader previously served on the board of directors of Chico's FAS, Inc. (NYSE: CHS) from December 2015 to April 2019 and Raymond James Financial, Inc. (NYSE: RJF) from February 2008 to February 2020. Ms. Broader is a member of the board of directors of Inspire Medical Systems, Inc. (NYSE: INSP) and Loblaw Companies Ltd. (TSX:L), IFCO Systems, and the Moffitt Cancer Center's National Board of Advisors. Ms. Broader holds a B.A. from Washington State University. We believe Ms. Broader's C-suite leadership experience at a multitude of leading multinational brands make her an appropriate member of our Board.

### Defendant Davis

34.     Defendant Davis has served as a Company director since August 2021. He also serves as Chair of the Compensation Committee. Since January 2023, Mr. Davis has served as a Partner of Brown Brothers Harriman & Co. (BBH), a privately owned financial services firm which provides banking services to certain officers of Dutch Bros. According to the 2023 Proxy Statement, as of March 21, 2023, Defendant Davis beneficially owned 1,254 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on March 21, 2023 was $29.45, Defendant Davis owned approximately $36,930 worth of Dutch Bros stock.

35.     For the 2022 Fiscal Year, Defendant Davis received $182,984 in total compensation from the Company. This included $83,000 in fees earned or paid in cash and

$99,984 in stock awards.

36.      The 2023 Proxy Statement stated the following about Defendant Davis:

Mr. Davis has served as a member of our Board since August 2021 and a member of the board of managers for Dutch Bros OpCo since October 2018. Since January 2023, Mr. Davis has served as a Partner of Brown Brothers Harriman & Co. (BBH), a privately owned financial services firm, where he oversees the New York, Latin America, and Chicago Private Banking offices, and where he previously served as a Managing Director since October 2012. Mr. Davis also serves as a member of the Private Banking Oversight Committee and the Private Banking Investment Oversight Committee. From July 2007 to August 2012, he served as a Vice President in the Investment Management division of The Goldman Sachs Group, Inc., a publicly-traded global investment banking, securities and investment management firm. Mr. Davis received an M.B.A. from the Mendoza College of Business at the University of Notre Dame and a B.B.A. from the University of San Diego. We believe that Mr. Davis's extensive leadership experience and expertise in strategy, finance, and management make him an appropriate member of our Board.

**Defendant Esserman**

37.      Defendant Esserman has served as a Company director since August 2021.

38.      According to the 2023 Proxy Statement, for the 2022 Fiscal Year, Defendant

Esserman received no additional compensation from the Company for his service as a director.

39.      The 2023 Proxy Statement stated the following about Defendant Esserman:

Mr. Esserman has served as a member of our Board since August 2021 and a member of the board of managers for Dutch Bros OpCo since October 2018. Mr. Esserman serves as the Chief Executive Officer of TSG Consumer Partners, L.P., a private equity firm specializing in the consumer products industry that he co-founded in 1987. He also serves as Chair of the Investment Committee. Since October 2016, he has served as a member of the board of directors of Duckhorn Portfolio, Inc., a luxury wine company (NYSE: NAPA). From November 2012 to November 2017, Mr. Esserman served as a member of the board of directors of Planet Fitness, Inc., a company focused on franchising and operating fitness centers (NYSE: PLNT). From July 2012 to January 2018, he served on the Board of Trust of Vanderbilt University. Mr. Esserman received an M.B.A. from Stanford University and a B.S., with top honors, in Computer Science Engineering from the Massachusetts Institute of Technology. We believe that Mr. Esserman's extensive experience in portfolio investments and consumer brands make him an appropriate member of our Board.

**Defendant George**

40.     Defendant George has served as a Company director since August 2021. She has also served as a Partner of BBH since 2008 and has been an employee of BBH for 37 years. According to the 2023 Proxy Statement, as of March 21, 2023, Defendant George beneficially owned 1,254 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on March 21, 2023 was $29.45, Defendant George owned approximately $36,930 worth of Dutch Bros stock.

41.     For the 2022 Fiscal Year, Defendant George received $171,696 in total compensation from the Company. This included $71,712 in fees earned or paid in cash and $99,984 in stock awards.

42.     The 2023 Proxy Statement stated the following about Defendant George:

Ms. George has served as a member of our Board since August 2021 and a member of the board of managers for Dutch Bros OpCo since October 2018. Since January 1, 2008, Ms. George has served as a Partner of BBH, a privately owned financial services firm, where she has worked for 37 years. Prior to assuming a leadership role in BBH's Private Banking business in 2015, she served as Chief Administrative Officer for over five years with responsibility for Global Audit, Risk, Compliance, Human Resources, and the Office of General Counsel. Ms. George currently serves as Chair of the Private Banking Investment Oversight Committee, Co-Chair of the Global Inclusion Council, and as a member of the Private Banking Oversight Committee, the Capital Partners Investment and Valuation Committee, and the Governance Risk and Compliance Committee. She is also on the board of the Brown Brothers Harriman Trust Company NA and the Brown Brothers Harriman Trust Company (Cayman) Limited. Since joining Brown Brothers Harriman & Co. in August 1986, she previously served in multiple positions, including Head of Merchant Banking and of Equity, Sales, Research, and Trading. Since September 2016, Ms. George has served as a member of the board of directors of Haven Behavioral Healthcare, Inc., a healthcare company. Since 2014, she has served as a trustee and member of the Governance Committee of Trinity College. Since 2012, Ms. George has served as Chairman of the Board of Trustees of the Gillen Brewer School. She is a former Member of the Executive Committee of the Episcopal High School in Alexandria, Virginia, where she chaired the Investment Committee. Ms. George received a B.A. in Economics from Trinity College where she was elected to Phi Beta Kappa. We believe that Ms. George's extensive leadership experience and expertise in strategy, finance and management make her an appropriate member of our Board.

**Defendant Gillett**

43.     Defendant Gillett has served as a Company director since December 2021. He also serves as a member of the Audit and Risk Committee. According to the 2023 Proxy Statement, as of March 21, 2023, Defendant Gillett beneficially owned 6,904 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading March 21, 2023 was $29.45, Defendant Gillett owned approximately $203,323 worth of Dutch Bros stock.

44.     For the 2022 Fiscal Year, Defendant Gillett received $180,794 in total compensation from the Company. This included $80,810 in fees earned or paid in cash and $99,984 in stock awards.

45.     The 2023 Proxy Statement stated the following about Defendant Gillett:

Mr. Gillett has served as a member of our Board since December 2021. Since January 2023, Mr. Gillett has served as Chief Executive Officer of Verily Life Sciences LLC (formerly, Google Life Sciences), a life sciences and technology company, where he previously served as Chief Operating Officer from November 2020 to January 2023, and as Executive Advisor from May 2020 to November 2020. Since June 2019, Mr. Gillett has served as Advisor of X Development, LLC (formerly, GoogleX), a research and development company, and since December 2016, Mr. Gillett has served as an Advisor of GV (formerly, Google Ventures) a venture capital investment company. From September 2019 to May 2020, Mr. Gillett served as Executive Advisor to the CEO of Alphabet Inc. (NASDAQ: GOOGL, GOOG), a multinational technology conglomerate holding company, and its subsidiary, Google LLC. From March 2017 to October 2021, Mr. Gillett served as Chief Executive Officer of Chronicle, a cybersecurity company that he co-founded that was later acquired by Google Cloud in June 2019. Since June 2020, Mr. Gillett has served as a member of the board of directors of Discord Inc., a communication company focused on developing an online voice, video, and text communication platform, where he also serves as Chair of the Nominating and Governance Committee. From March 2015 to May 2017, Mr. Gillett served as a member of the board of directors of Chipotle Mexican Grill, Inc. (NYSE: CMG), a multinational fast casual restaurant company, where he also served as a member of the Audit and Nominating and Governance Committees. Mr. Gillett also served as member of the board of directors of Symantec Corporation from 2011 to 2012, where he also served as EVP, and Chief Operating Officer from December 2012 to July 2015 prior to its acquisition by Broadcom, Inc. Mr. Gillett received an

M.B.A. from San Francisco State University and a B.S. from the University of Oregon. We believe that Mr. Gillett's extensive leadership experience and expertise in technology, retail, strategy, and management make him an appropriate member of our Board.

**Defendant Jack**

46.     Defendant Jack has served as a Company director since August 2021. She also serves as a member of the Compensation Committee.

47.     According to the 2023 Proxy Statement, for the 2022 Fiscal Year, Defendant Jack received no additional compensation from the Company for her service as a director.

48.     The 2023 Proxy Statement stated the following about Defendant Jack:

Ms. Jack has served as a member of our Board since August 2021 and a member of the board of managers for Dutch Bros OpCo since October 2018. From 2011 to January 2023, Ms. Jack served at TSG Consumer Partners, L.P., a private equity company, most recently as Managing Director and a member of the Investment Committee. Since April 2017, she has served as a member of the board of directors of BrewDog plc, a global independent craft brewing company. Since July 2015, she has served as a member of the board of directors of Backcountry.com, LLC, a retail company specializing in outdoor gear and apparel. From June 2016 to March 2021, Ms. Jack served as a member of the board of directors of Canyon Bicycles GmbH, a direct-to-consumer bicycle company. From April 2014 to December 2020, she served as a member of the board of directors of SweetWater Brewing Company, a craft brewing company. From July 2018 to February 2020, Ms. Jack served as a member of the board of directors of Prive Goods, LLC, a designer eyewear company. From October 2012 to August 2016, she served as a member of the board of directors of IT Cosmetics, LLC, a beauty company. Prior to joining TSG Consumer Partners, L.P., Ms. Jack served as a Managing Director of Rosewood Capital, LP, a private equity company. Ms. Jack received a B.A., with honors, in Communication Studies from Vanderbilt University. We believe that Ms. Jack's extensive experience in portfolio investments and consumer brands and expertise in strategy and management make her an appropriate member of our Board.

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

49.     By reason of their positions as officers, directors, and/or fiduciaries of Dutch Bros and because of their ability to control the business and corporate affairs of Dutch Bros, the Individual Defendants owed Dutch Bros and its shareholders fiduciary obligations of trust,

loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Dutch Bros in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Dutch Bros and its shareholders so as to benefit all shareholders equally.

50.     Each director and officer of the Company owes to Dutch Bros and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

51.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Dutch Bros, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

52.     To discharge their duties, the officers and directors of Dutch Bros were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

53.     Each Individual Defendant, by virtue of their position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Dutch Bros, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the

Company has been ratified by the remaining Individual Defendants who collectively comprised a majority of Dutch Bros' Board at all relevant times.

54.     As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

55.     To discharge their duties, the officers and directors of Dutch Bros were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Dutch Bros were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Oregon, and the United States, and pursuant to Dutch Bros' own Code of Business Conduct and Ethics (the "Code of Conduct");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Dutch Bros conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Dutch Bros and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Dutch Bros' operations would comply with all applicable laws and Dutch Bros' financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

56.     Each of the Individual Defendants further owed to Dutch Bros and the shareholders the duty of loyalty requiring that each favor Dutch Bros' interest and that of its

shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

57.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Dutch Bros and were at all times acting within the course and scope of such agency.

58.     Because of their advisory, executive, managerial, directorial, and controlling positions with Dutch Bros, each of the Individual Defendants had access to adverse, nonpublic information about the Company.

59.      The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Dutch Bros.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

60.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

61.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

62.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of Dutch Bros was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

63.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

64.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Dutch Bros and was at all times acting within the course and scope of such agency.

## DUTCH BROS' CODE OF COUNDUCT

65.     Dutch Bros' Code of Conduct opens by stating that the Company "is committed to maintaining the highest standards of business conduct and ethics." The Code of Conduct provides Company employees with a guide for "apply[ing] good judgment and the highest personal ethical standards in making business decisions."

66.     Regarding "Honest and Ethical Conduct," the Code of Conduct states the

following:

> It is our policy to promote high standards of integrity by conducting our affairs in an honest and ethical manner. Dutch Bros' integrity and reputation depends on the honesty, fairness, and integrity brought to the job by each person associated with us. Unyielding integrity and sound judgement is the foundation of corporate integrity.

67.     Regarding "Legal Compliance," the Code of Conduct states the following:

> Obeying the law is the foundation of this code. Our success depends upon each employee operating within legal guidelines and cooperating with local, national, and international authorities. We expect employees to understand the legal and regulatory requirements applicable to their business units and areas of responsibility. Violation of domestic or foreign laws, rules, and regulations may subject an individual, as well as Dutch Bros, to civil and/or criminal penalties.

68.     Regarding "Insider Trading," the Code of Conduct states the following, in

relevant part:

> Employees, officers, and directors who have access to confidential (or "inside") information are not permitted to use or share that information for stock trading purposes. All non-public information about Dutch Bros or about other companies is considered confidential information. To use material non-public information in connection with buying or selling securities, including "tipping" others who might make an investment decision on the basis of this information, is illegal.

69.     Regarding "Conflicts of Interest," the Code of Conduct provides:

> We expect our employees, officers, and directors to be free from influences that conflict with the best interests of Dutch Bros or might deprive Dutch Bros of their undivided loyalty in business dealings. Even just the appearance of a conflict of interest can be damaging and should be avoided. Whether or not a conflict of interest exists can be unclear. The following are some (but not all) situations that may involve problematic conflicts of interests: (a) employment by, consulting for, or service on the board of a competitor, customer, or supplier; (b) owning a significant financial interest in an entity that does business, seeks to do business, or competes with us; (c) soliciting or accepting gifts, favors, loans, or preferential treatment from any person or entity that does business or seeks to do business with us; (d) certain types of "moonlighting"; and (e) loans to, or guarantees of obligations of, employees, officers, or directors or their family members by Dutch Bros. If you have any concerns about how to comply with this policy, you should discuss them with the head of the Company's legal department (the ***"Chief Legal Officer"***).

(Emphasis in original.)

70.     The Code of Conduct section on "Financial Integrity" states the following:

The integrity of our records and public disclosure depends upon the validity, accuracy, and completeness of the information supporting the entries to our books of account. Therefore, our corporate and business records should be completed accurately and honestly. The making of false or misleading entries is strictly prohibited. Our records serve as a basis for managing our business and are important in meeting our obligations to customers, suppliers, creditors, employees, and others. We also rely upon our accounting and other business and corporate records in preparing publicly-filed reports. Securities laws require that these reports provide full, fair, accurate, timely, and understandable disclosure and fairly present our financial condition and results of operations. Employees who contribute in any way in preparing or verifying these reports should strive to ensure that our financial disclosure is complete, accurate, and transparent.

71.     Regarding "Questions and Reporting Potential Violations," the Code of Conduct states:

If you are aware of a suspected or actual violation of this code, you have a responsibility to promptly report it to your supervisor, Human Resources, or the Chief Legal Officer. If you prefer to report a suspected or actual violation of this code anonymously, follow the process for filing anonymous complaints outlined in the Whistleblower Policy. The applicable recipient of the report will investigate all reported possible code violations promptly and with the highest degree of confidentiality that is possible under the specific circumstances. As appropriate, the Board of Directors and/or one of its committees shall be notified of any suspected or actual violation of this code. If any investigation indicates that a violation of this code has probably occurred, we will take such action as we believe to be appropriate under the circumstances. If we determine that an employee, officer, or director is responsible for a code violation, he or she will be subject to disciplinary action up to, and including, termination and, in appropriate cases, civil action or referral for criminal prosecution.

Please note that retaliation against employees reporting violations of this code is prohibited and we will take prompt disciplinary action against any employee, officer, or director who attempts to retaliate against you for reporting violations.

72.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the

Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, violations of the Exchange Act, and aiding and abetting thereof. Moreover, two of the Individual Defendants violated the Code of Conduct by engaging in insider trading. Also in violation of the Code of Conduct, the Individual Defendants failed to maintain the accuracy of Company records and reports, comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct.

## DUTCH BROS' CHARTER OF THE AUDIT AND RISK COMMITTEE OF THE BOARD OF DIRECTORS

73.     The Company also maintains a Charter of the Audit and Risk Committee of the Board of Directors (the "Charter"). According to the Charter, the purpose of the Audit and Risk Committee is to, *inter alia*:

- oversee the Company's accounting and financial reporting processes, systems of internal control, financial statement audits, and the integrity of the Company's financial statements;

- manage the selection, engagement terms, fees, qualifications, independence, and performance of the registered public accounting firms engaged as the Company's independent outside auditors for the purpose of preparing or issuing an audit report or performing audit services (the ***"Auditors"***);

- maintain and foster an open avenue of communication with the Company's management, internal audit group, and Auditors;

- review any reports or disclosures required by applicable law and the New York Stock Exchange listing requirements (the "listing requirements");

- oversee the design, implementation, organization, and performance of the Company's internal audit function;

- help the Board oversee the Company's data security, information technology use and protection, and legal and regulatory compliance, including risk assessment; and

- provide regular reports and information to the Board.

(Emphasis in original.)

74.     In a section titled "Audited Financial Statement Review; Quarterly and Annual Reports," the Charter states:

> The Committee will review the annual audited financial statements, the quarterly financial statements, and the Company's "Management's Discussion and Analysis of Financial Condition and Results of Operations" and "Risk Factors," as appropriate, with management and the Auditors. The Committee will be responsible for recommending to the Board whether the proposed annual audited financial statements should be included in the Company's Annual Report on Form 10-K.

75.     In a section titled "Earnings Announcements," the Charter states that "[t]he Committee will review and discuss with management and the Auditors any proposed earnings press releases and other financial information and guidance regarding the Company's results of operations provided publicly or to ratings agencies."

76.     In a section titled "Risk Assessment and Management," the Charter states:

> The Committee will review and discuss with management and the Auditors the Company's processes and policies on enterprise risk identification, management, and assessment in all areas of the Company's business, but the Board shall continue to have overall responsibility for evaluating key business risks faced by the Company, including but not limited to data privacy, technology, information security (including data-security and back-up of information systems), competition, and regulation. Areas of focus for the Committee shall include the Company's policies and other matters relating to the Company's investments, cash management and foreign exchange management, major financial risk exposures, the adequacy and effectiveness of the Company's information security policies and practices and the internal controls regarding information security, and the steps taken by management to monitor and mitigate or otherwise control these exposures and to identify future risks.

77.     In violation of the Charter, Defendants Broader, George, and Gillett failed to adequately review and discuss the Company's quarterly earnings press releases; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure

controls and procedures, and Code of Conduct.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

78.     Dutch Bros is a Delaware corporation based in Oregon that operates and franchises drive-thru coffee shops and distributes and sells coffee and coffee-related products. Dutch Bros represents that, as of March 31, 2022, it had a total of 572 shops in operation throughout 12 U.S. states, 310 of which were company-operated and 262 of which were franchised.

### False and Misleading Statements

### *March 1, 2022 Conference Call*

79.     On March 1, 2022, the Company hosted a conference call with investors to discuss its fourth quarter 2021 results. During the call, while discussing the Company's margins, Defendant Ricci stated the following, in relevant part:

> Our confidence in our people pipeline and development team allowed us to accelerate openings ahead of plan, allowing these shops to sooner contribute to profitability in 2022. While we are not immune to margin pressures but are managing it appropriately, we continue to look for operational improvements and further opportunities in our market-based pricing model.

80.     Also during the call, an analyst inquired about whether Dutch Bros would be raising prices to offset potential margin pressures, asking: "[a]re you contemplating adding more pricing to address some of the cost pressures in the business this year?" In response, Defendant Ricci stated:

> So we look typically in a normal time frame. We're going to look at our pricing windows every 6 months, right, in the fall before holiday, in the spring before summer. And so we're very mindful of that. *I think we've been fortunate to not have a lot of inflation drag, both in '21 and frankly, moving into early '22. And so we haven't felt compelled . . . . But we are feeling good as we enter '22 with the trajectory of our margins, given everything going on.*

24

(Emphasis added.)

81.     Later during the call, another analyst requested more details on the Company's margins for 2022, asking: "what [do] you think, well, COGS and labor inflation might be in '22[?] [A]nd therefore, if you can give any kind of directional color . . .  what guidance might be for the first quarter or the full year '22 on that restaurant operating margin line?" In response, Defendant Jemley stated the following:

> Yes. ***So we're fortunate that the two big costs, cost of goods and labor, we don't have any real significant upward momentum in the labor line.*** So we're starting halfway better than everybody else, to begin with. And then secondly, we have a pretty simple pantry of goods.
>
> What we're really dealing with right now is freight and logistics costs going up. But we're able to do, as we've shown in Q4 and the walk I gave you in COGS, we're really able to handle that pretty effectively, and we'll get a full quarter of the price impact from November in our Q1. In terms of guiding a specific margin for Q1, I'd prefer not to do that. It is a -- Q4 is the lowest seasonality, Q1 is the next lowest seasonality.
>
> And then we kind of get into Q2. ***But I just think from a -- other than the discount rollover from a year-over-year perspective, we're just not feeling compression in margins.*** And the biggest thing for us is our labor costs are stable.

(Emphasis added.)

82.     Similarly, another analyst asked for context regarding the Company's guidance, given that Dutch Bros at that point was already two-thirds of the way through the first quarter of 2022. Specifically, the analyst asked, "does guidance embed some level of conservatism for the quarter? Or . . . just two-thirds of the way through the first quarter, that January maybe was a little bit more soft due to omicron before bounding in February? Just looking to better contextualize the guidance for 1Q." In response, Defendant Jemley stated the following:

> Yes. ***It was softer in January. It was better in February, less outages.*** We're sitting ahead of the mid-singles right now. We're -- like everybody, don't know where the world is going to go over the next 30 days with all that's going on. ***And***

*so we're just being a little tepid about how we look at things. It doesn't really move the needle much.* The biggest revenue driver is annualization of new stores and new stores getting added. So it gets a lot of talk track and it is important to the underlying health of the business, but it's really not that financially meaningful right now as fast as we're growing the top line. That's why we don't -- we try not to overthink it.

(Emphasis added.)

83.     The statements in paragraphs ¶¶ 79–82 above were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the identified statements failed to disclose that: (1) the Company's costs and expenses were increasing, including those of dairy; (2) as a result, Dutch Bros was experiencing increased margin pressure and decreased profitability in the first quarter of 2022; and (3) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### *2022 Proxy Statement*

84.     On April 21, 2022, Dutch Bros filed its Schedule 14A with the SEC (the "2022 Proxy Statement"). Defendants Ricci, Boersma, Broader, Davis, Esserman, George, Gillett, and Jack solicited the 2022 Proxy Statement, filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

85.     The 2022 Proxy Statement called for shareholder approval of, *inter alia*: (1) the reelection of directors Boersma, Ricci, Broader, Davis, Esserman, George, Gillett, and Jack to the Board; and (2) the ratification of the appointment of KPMG LLP as the independent registered public accounting firm of the Company for the 2022 Fiscal Year.

86.     With respect to Risk Oversight, the 2022 Proxy Statement stated the following:

One of the Board's key functions is informed oversight of Dutch Bros' risk

26

management process. The Board and Audit and Risk Committee of the Board administer risk oversight functions to address risks inherent in their respective areas of oversight. In particular, our Board is responsible for monitoring and assessing strategic risk exposure, including a determination of the nature and level of risk appropriate for us. Our Audit and Risk Committee has the responsibility to consider and discuss our major financial risk exposures and the steps our management has taken to monitor and control these exposures, including guidelines and policies to govern the process by which risk assessment and management is undertaken. The Audit and Risk Committee also monitors compliance with legal and regulatory requirements, in addition to oversight of the performance of our internal audit function. Audit and Risk Committee responsibilities also include oversight of cybersecurity risk management, and, to that end, the committee periodically reviews and discusses with management risks relating to data privacy, technology, and information security, including cybersecurity, and backup of information systems and the steps we have taken to monitor and control such exposures.

87.    Regarding the Code of Conduct, the 2022 Proxy Statement stated the following:

Our Code of Business Conduct and Ethics applies to all of our employees, officers and directors. This includes our principal executive officer, principal financial officer, and principal accounting officer or controller, or persons performing similar functions. The full text of our Code of Business Conduct and Ethics may be viewed at the investors relations portion of our website at https://investors.dutchbros.com/govenance. We intend to satisfy the disclosure requirements under Item 5.05 of the SEC Form 8-K regarding an amendment to, or waiver from, a provision of our Code of Business Conduct and Ethics by posting such information on our website at the website address and location specified above.

88.    The 2022 Proxy Statement was materially false and misleading because, despite assertions to the contrary, the Company's Code of Conduct was not followed, as evidenced by the Individual Defendants (1) making and/or causing the Company to make the numerous false and misleading statements and omissions alleged herein; and (2) failing to report violations of the Code of Conduct. Further, the 2022 Proxy Statement was materially false and misleading because, despite assertions to the contrary, the Board was not adequately performing its risk oversight functions.

89.    The 2022 Proxy Statement also failed to disclose, *inter alia,* that: (1) the

Company's cost and expenses were increasing, including those of dairy; (2) as a result, Dutch

Bros was experiencing increased margin pressures and decreased profitability in the first quarter

of 2022; and (3) the Company failed to maintain internal controls. As a result, the Company's

public statements were materially false and misleading at all relevant times.

90.    As a result of Defendants Ricci, Boersma, Broader, Davis, Esserman, George,

Gillett, and Jack causing the 2022 Proxy Statement to be false and misleading, Company

shareholders voted, *inter alia*, to re-elect Defendants Ricci, Boersma, Broader, Davis, Esserman,

George, Gillett, and Jack to the Board, thus allowing them to continue breaching their fiduciary

duties to the Company.

## **THE TRUTH EMERGES**

91.    On May 11, 2022, following the close of the market, Dutch Bros issued a press

release wherein it announced its financial results for the first quarter of 2022. In the press release,

Dutch Bros reported a net loss of $16.3 million, compared to a net loss of $4.8 million for the

first quarter of 2021. Further, the Company reported an adjusted net loss of $2.5 million (a loss

of $0.02 per share), which fell below the Street's estimated earnings of $0.01 per share. In

relevant part, Dutch Bros stated:

> Joth Ricci, Chief Executive Officer and President of Dutch Bros Inc., stated, "The
> consumer demand for our beverages remains strong. Our substantial top-line
> revenue growth of 54% was primarily driven by the 107 company-operated shops
> opened over the past twelve months, a 56% increase, including 34 during the first
> quarter, and same shop sales of 6.0%. As a people-led growth story, we are
> particularly encouraged by our staffing levels and the performance of our newest
> shops, spread across many markets, including some that generated record initial
> sales. Our ability to increase revenues while successfully developing new shops
> reinforces our commitment to offering exceptional drive-thru experiences and
> confidence in our long-term strategy and growth targets."
>
> He added, "***Still we were not immune to the record inflation that surpassed our
> expectations and pressured margins in our company-operated shops. While we
> believe these margin impacts may be short-term, we have opted to take a more***

*conservative stance regarding adjusted EBITDA for 2022 as we monitor our pricing and the escalating cost environment*."

(Emphasis added.)

92.     Regarding the Company's highlights for the first quarter of 2022, the press release represented the following:

**First Quarter 2022 Highlights:**

- **Opened** 34 new shops, our second-highest quarterly opening count on record. All shops opened in the quarter were company-operated shops.

- **Total revenues** grew 54.0% to $152.2 million as compared to $98.8 million in the same period of 2021.

- **Company-operated shop revenues** increased 67.1% to $130.2 million as compared to $77.9 million in the same period of 2021.

- **System same shop sales grew** 6.0% in the first quarter and 11.1% vs. 2019. Company-operated same shop sales grew 5.1% in the first quarter, reflecting higher traffic and check, partially offset by intentional sales transfer, and 9.9% vs. 2019.

- **Company-operated shop gross profit** was $16.6 million as compared to $17.6 million in the same period of 2021.

- **Company-operated shop contribution**, a non-GAAP financial measure, grew 14.1% to $23.8 million as compared to $20.8 million in the same period of 2021.

- **Net loss** was $(16.3) million as compared to $(4.8) million in the same period of 2021. For the first quarter of 2022, we recognized $9.9 million of non-cash equity-based compensation.

- **Adjusted EBITDA**, a non-GAAP financial measure, was $9.7 million as compared to $18.7 million in the same period of 2021. Rapid escalations in dairy costs well above historic levels drove increases in our cost of sales. Cost related to more rapid new unit growth, escalating minimum wage in select mature markets, and other factors drove increases in labor costs. The timing of certain maintenance and travel costs also contributed to increased operating and other costs.

- **Adjusted net income (loss)**, a non-GAAP financial measure, was $(2.5) million as compared to $12.3 million in the same period of 2021.

- **Net loss per share of Class A and Class D common stock - diluted** was $(0.10) and **Adjusted net loss per fully exchanged share of common stock**, a non-GAAP financial measure, was $(0.02).

(Footnotes omitted.)

93.     Also on May 11, 2022, following the close of the market, Dutch Bros hosted a conference call to discuss its first quarter 2022 results. During the call, Defendant Ricci revealed that numerous factors had compressed the Company's margins during the first quarter of 2022, including dairy costs, which resulted in Dutch Bros' expanded net loss. Defendant Ricci stated the following, in relevant part:

> While we are pleased with the strength of our revenue in shop development in the first quarter, margin pressure on our company shops led to a lower adjusted EBITDA result than we expected. *That margin pressure was primarily a result of these factors: our decision to be disciplined on the price we took, which we believe is less than half as much as many of our peers; faster inflation and cost of goods, especially in dairy; the pull forward of deferred expenses related to the maintenance of shops; and normal new store inefficiency amplified by the volume of new and ramping units in quarter 1.*
>
> ***
>
> Everything we do inside the company is focused on making the business better and stronger 3, 5 and 10 years from today. *Unfortunately, in this past quarter, a confluence of cost pressures overwhelmed our decisions around price and resulted in near-term margin compression.* We anticipated higher expenditures. However, we did not perceive the speed and magnitude of cost escalation within the quarter.
>
> *Dairy, for example, which makes up 28% of our commodity basket, rose almost 25% in Q1. While costs rose throughout the quarter, we experienced a change in sales trajectory from mid-March onward as macroeconomic headwinds accelerated and comps turned negative.* We are monitoring these factors and have chosen to take a more conservative stance on our 2022 outlook given macroeconomic uncertainty.
>
> ***
>
> We opened 54 company shops in a condensed time frame *from December through March. Therefore, we experienced margin pressure from an accelerating pace of new unit openings both in terms of elevated preopening spend and normal new shopping efficiency.* Given the pace of openings and the speed by which the business is transforming, a degree of variability within our

results may often be the case over time.

***

As I mentioned before, quarterly adjusted EBITDA was $9.7 million, **_impacted largely by our decisions on pricing, dairy costs, labor costs, our decision to invest in preventative maintenance and the impact of accelerated new shop development._**

(Emphasis added.)

94.    During the call, Defendant Jemley reiterated and expanded on Defendant Ricci's revelations, stating the following:

However, as Q1 unfolded, we experienced three significant rapid cost escalations that on an individual basis would not have caused distress, **_but when taken collectively, did overwhelm our P&L, faster input cost inflation, especially in dairy and also labor cost increases,_** the pull forward of expenses related to the ongoing care and condition of shops and new and normal new store inefficiency, amplified by the sheer volume of new and ramping units in quarter 1.

In the first quarter, we encountered 480 basis points of cost pressure from those higher ingredient costs relative to the prior year. As Joth noted, **_dairy increased by almost 25% toward the end of the first quarter_** to near historic highs in what is now 28% of our ingredients cost basket. We did not anticipate this sharp rise. **_While we do not believe dairy will stay this high indefinitely, we have to assume it will remain high for most of 2022._**

**_Additionally, we encountered 240 basis points of cost pressure on our labor line._** This includes high training costs, higher overtime to keep stores open, and higher legislated minimum wage advances in California, Arizona, and Washington states. We continue to see stability in our workforce despite a slight uptick in turnover in the first quarter. The good news is that our stores are staffed and operating at full hours. The combination of margin pressure from ingredient costs and higher labor costs resulted in margin compression of 720 basis points prior to offsets we achieved through menu price increases.

***

**_Inflation in both ingredient and operating costs has risen rapidly_**, catching us off guard from the speed and the sharpness of this rise. **_In the short term, it is unlikely that our new menu price actions will fully offset the extent of these input cost increases._**

(Emphasis added.)

95.    Later, during the question-and-answer portion of the conference call, Defendant

Ricci emphasized that the Company's plan was to improve its dairy purchasing and labor management practices to decrease costs, stating the following in relevant part:

> So I think on the commodity costs in the place that we're at right now to see short-term effective improvement is limited in how we buy and kind of where we're at. We're out long on coffee. Dairy, obviously, you don't have a lot of control over. And then really, we're kind of beholden to some freight impact and some other small basket of goods because we just don't have that much in our basket. It just so happens that dairy makes up such a large percentage of that basket.
>
> Previously, we have been talking coffee a lot and had said it makes up just a small percentage. We're OK on coffee, which continues to be the case. ***But dairy certainly caught us off guard. I do think we have some opportunity to improve internally on our purchasing and our purchasing capabilities and how we look at that long term. And as we grow, that is an area of emphasis for Charlie and myself, as we kind of, I'd say, build that muscle here at Dutch Bros.***
>
> Two is related to how we manage shops. And I will tell you that our retail ops team is looking hard right now at labor. ***I think we all need to be looking at labor, and we all need to be thinking about how we manage labor, especially related to overtime and things of that nature and may be related some daypart flexibility.*** Just because of the nature of the business is changing a little bit and the nature of the market is changing a little bit, we need to be flexible on how we do that.

96.     On this news, the Company's stock price fell $9.26 per share, or 26.9%, from a closing price of $34.37 per share on May 11, 2022 to close at $25.11 per share on May 12, 2022.

## DAMAGES TO DUTCH BROS

97.     As a direct and proximate result of the Individual Defendants' conduct, Dutch Bros has lost and will continue to lose and expend many millions of dollars.

98.     Such expenditures include, but are not limited to, the fees associated with the Securities Class Action filed against the Company and the Company's CEO and CFO, and any internal investigations, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

99.     Additionally, these expenditures include, but are not limited to, unjust

compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

100.     As a direct and proximate result of the Individual Defendants' conduct, Dutch Bros has also suffered and will continue to suffer a loss of reputation and goodwill, and a "lair's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

101.     Plaintiff brings this action derivatively and for the benefit of Dutch Bros to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Dutch Bros, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, violations of the Exchange Act, the aiding and abetting thereof, as well as for contribution under Sections 10(b) and 21D of the Exchange Act.

102.     Dutch Bros is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

103.     Plaintiff is, and has been at all relevant times, a shareholder of Dutch Bros. Plaintiff will adequately and fairly represent the interests of Dutch Bros in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY

104.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

105.     A pre-suit demand on the Board is futile and, therefore, excused. When this action was filed, Dutch Bros' Board consisted of Defendants Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci (the "Director-Defendants"), along with non-party Ann Miller (collectively with the "Director-Defendants," the "Directors"). Plaintiff needs only to allege demand futility as to five of the nine Directors that were on the Board at the time this action was filed.

106.     Demand is excused as to all of the Director-Defendants because each of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts. This renders the Director-Defendants unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

107.     Moreover, each of the Director-Defendants, that is, Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci, solicited the 2022 Proxy Statement to call for a shareholder vote to, *inter alia*, re-elect themselves to the Board, thus allowing them to continue breaching their fiduciary duties to Dutch Bros.

108.     In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly caused or permitted Dutch Bros to issue materially false and misleading statements. Specifically, the Director-Defendants caused Dutch Bros to issue false and misleading statements which were intended to make Dutch Bros appear more profitable and attractive to investors. Moreover, the Director-Defendants caused the Company to fail to maintain internal controls. As a result of the foregoing, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon

them is futile, and thus excused.

109.    Additional reasons that demand on Defendant Ricci is futile follow. Defendant Ricci serves as CEO of the Company and has served as a Company director since August 2021. As such, the Company provides Defendant Ricci with his principal occupation for which he receives lucrative compensation. Thus, as the Company admits, he is a non-independent director. As CEO and a director throughout the Relevant Period, Defendant Ricci was ultimately responsible for all of the false and misleading statements and omissions that were made by or on behalf of the Company. In addition, Defendant Ricci solicited the 2022 Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting him to the Board. As the Company's highest officer and a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. In addition, Defendant Ricci's insider sales, which yielded approximately $6.3 million in proceeds, demonstrate his motive in facilitating and participating in the fraud. Moreover, Defendant Ricci is a defendant in the Securities Class Action. For these reasons, Defendant Ricci breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

110.    Additional reasons that demand on Defendant Boersma is futile follow. Defendant Boersma co-founded Dutch Bros in 1992 and has served as Executive Chairman of the Board since August 2021. As such, the Company provides Defendant Boersma with his principal occupation for which he receives lucrative compensation. Thus, as the Company admits, he is a non-independent director. In addition, Defendant Boersma solicited the 2022

Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting him to the Board. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Boersma breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

111.    Additional reasons that demand on Defendant Broader is futile follow. Defendant Broader has served as a Company director since August 2021. She is also the Chair of the Audit and Risk Committee. Defendant Broader has received and continues to receive compensation for her role as a director as described above. In addition, Defendant Broader solicited the 2022 Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting her to the Board. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Broader breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

112.    Additional reasons that demand on Defendant Davis is futile follow. Defendant Davis has served as a Company director since August 2021 and is the Chair of the Compensation Committee. Defendant Davis has received and continues to receive compensation for his role as a director as described above. Further, Defendant Davis has served as a Managing Director of BBH, a privately owned financial services firm which provides banking services to certain

officers of Dutch Bros, since October 2012. Thus, as the Company admits, he is a non-independent director. In addition, Defendant Davis solicited the 2022 Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting him to the Board. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Davis breached his fiduciary duties, faces a substantial likelihood of liability, is not disinterested, and thus demand upon him is futile and, therefore, excused.

113.   Additional reasons that demand on Defendant Esserman is futile follow. Defendant Esserman has served as a Company director since August 2021. In addition, Defendant Esserman solicited the 2022 Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting him to the Board. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Esserman breached his fiduciary duties, faces a substantial likelihood of liability, is not disinterested, and thus demand upon him is futile and, therefore, excused.

114.   Additional reasons that demand on Defendant George is futile follow. Defendant George has served as a Company director since August 2021 and also serves as a member of the Audit and Risk Committee. Defendant George has received and continues to receive compensation for her role as a director as described above. Additionally, Defendant George has

served as a Partner of BBH, a privately owned financial services firm which provides banking services to certain officers of Dutch Bros, since January 2008 and has served as an employee of BBH for more than 37 years. Thus, as the Company admits, she is a non-independent director. In addition, Defendant George solicited the 2022 Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting her to the Board. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant George breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

115. Additional reasons that demand on Defendant Gillett is futile follow. Defendant Gillett has served as a Company director since December 2021. He is also a member of the Audit and Risk Committee. Defendant Gillett has received and continues to receive compensation for his role as a director as described above. In addition, Defendant Gillett solicited the 2022 Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting him to the Board. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons, Defendant Gillett breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

116. Additional reasons that demand on Defendant Jack is futile follow. Defendant

Jack has served as a Company director since August 2021. She is also a member of the Compensation Committee. In addition, Defendant Jack solicited the 2022 Proxy Statement which contained false and misleading elements that contributed, *inter alia*, to shareholders reelecting her to the Board. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Jack breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

117.     Additional reasons that demand on the Board is futile follow.

118.     Defendants Broader and Gillett (collectively, the "Audit and Risk Committee Defendants") served as members of the Audit and Risk Committee at all relevant times. As such, they were responsible for the effectiveness of the Company's internal controls, the truth and accuracy of the Company's financial statements, and the Company's compliance with applicable laws and regulations. During the Relevant Period, they violated the Charter by engaging in or permitting the Company to engage in the dissemination of materially false and misleading statements to the public and to facilitate the Individual Defendants' violations of law, including breaches of fiduciary duty and violations of the Exchange Act; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure controls and procedures, and Code of Conduct. Thus, the Audit and Risk Committee Defendants breached their fiduciary duties, are not independent or disinterested, and thus demand is excused as to them.

119.     In violation of the Code of Conduct, the Director-Defendants engaged in or

permitted the scheme to cause the Company to issue materially false and misleading statements to the investing public, and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act. In addition, the Individual Defendants violated the Code of Conduct by failing to act with integrity, failing to avoid conflicts of interest, failing to ensure the Company's disclosures were accurate, failing to ensure the Company complied with applicable laws, rules, and regulations, and failing to promptly report known violations of the Code of Conduct and the law. Thus, the Director-Defendants breached the Company's own Code of Conduct, are not disinterested, and demand is excused as to them.

120.    Dutch Bros has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or any others who were responsible for the wrongful conduct to attempt to recover for Dutch Bros any part of the damages Dutch Bros suffered and will continue to suffer thereby. Thus, any demand upon the Director-Defendants would be futile.

121.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director-Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being

futile.

122.     The acts complained of herein constitute violations of fiduciary duties owed by Dutch Bros' officers and directors, and these acts are incapable of ratification.

123.     The Director-Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Dutch Bros. If there is a directors' and officers' liability insurance policy covering the Director-Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director-Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director-Defendants were to sue themselves or certain of the officers of Dutch Bros, there would be no directors' and officers' insurance protection. Accordingly, the Director-Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director-Defendants is futile and, therefore, excused.

124.     If there is no directors' and officers' liability insurance, then the Director-Defendants will not cause Dutch Bros to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

125.     Thus, for all of the reasons set forth above, all of the Director-Defendants, and, if not all of them, at least five of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

**FIRST CLAIM**
**Against the Individual Defendants for Violations of Section 14(a) of the Exchange Act**

126.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

127.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

128.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

129.    Under the direction and watch of the Director-Defendants, the 2022 Proxy Statement failed to disclose that, contrary to the 2022 Proxy Statement's descriptions of the Board's risk oversight function and the Audit and Risk Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing and/or permitting the Company to issue false and misleading statements, and were not complying with the Code of Conduct.

130.    The 2022 Proxy Statement also failed to disclose that: (1) the Company's costs and expenses were increasing, including those of dairy; (2) as a result, Dutch Bros was

experiencing increased margin pressure and decreased profitability in the first quarter of 2022; and (3) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

131.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2022 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2022 Proxy Statement, including but not limited to, the election of Defendants Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci to the Board.

132.    The false and misleading elements of the 2022 Proxy Statement led to, among other things, the election of the Defendants Boersma, Broader, Davis, Esserman, George, Gillett, Jack, and Ricci, which allowed them to continue to breach their fiduciary duties to Dutch Bros.

133.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2022 Proxy Statement.

134.    Plaintiff, on behalf of Dutch Bros, has no adequate remedy at law.

## SECOND CLAIM
**Against the Individual Defendants for Breach of Fiduciary Duties**

135.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

136.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Dutch Bros' business and affairs.

137.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

138.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Dutch Bros.

139.     Moreover, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements about Dutch Bros' business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (1) the Company's costs and expenses were increasing, including those of dairy; (2) as a result, Dutch Bros was experiencing increased margin pressure and decreased profitability in the first quarter of 2022; and (3) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

140.     The Individual Defendants failed to correct and/or caused the Company to fail to correct the false and misleading statements and omissions of material fact, thus rendering them personally liable to the Company for breaching their fiduciary duties.

141.     Also in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

142.     In yet further breach of their fiduciary duties, during the Relevant Period, two of the Individual Defendants engaged in lucrative insider sales, netting proceeds of approximately $7.3 million, while the price of the Company's common stock was artificially inflated due to the false and misleading statements of material fact discussed herein.

143.    The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

144.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

145.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

146.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Dutch Bros has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

147.    Plaintiff, on behalf of Dutch Bros, has no adequate remedy at law.

## THIRD CLAIM
### Against the Individual Defendants for Unjust Enrichment

148.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

149.    By their wrongful acts, violations of law, and false and misleading statements and

omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Dutch Bros.

150.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Dutch Bros that was tied to the performance or artificially inflated valuation of Dutch Bros, or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct.

151.    Plaintiff, as a shareholder and representative of Dutch Bros, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breaches of their fiduciary duties.

152.    Plaintiff, on behalf of Dutch Bros, has no adequate remedy at law.

**FOURTH CLAIM**
**Against the Individual Defendants for Abuse of Control**

153.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

154.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Dutch Bros, for which they are legally responsible.

155.    As a direct and proximate result of the Individual Defendants' abuse of control, Dutch Bros has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

156.    Plaintiff, on behalf of Dutch Bros, has no adequate remedy at law.

**FIFTH CLAIM**
**Against the Individual Defendants for Gross Mismanagement**

157.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

146.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Dutch Bros in a manner consistent with the operations of a publicly-held corporation.

147.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Dutch Bros has sustained and will continue to sustain significant damages.

148.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

149.    Plaintiff, on behalf of Dutch Bros, has no adequate remedy at law.

**SIXTH CLAIM**
**Against the Individual Defendants for Waste of Corporate Assets**

150.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

151.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions (as evidenced, for example, by the Securities Class Action), to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

152.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

153.    Plaintiff, on behalf of Dutch Bros, has no adequate remedy at law.

**SEVENTH CLAIM**
**Against Defendants Ricci and Jemley for Contribution**
**Under Sections 10(b) and 21D of the Exchange Act**

154.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

155.    Dutch Bros, Defendant Ricci, and Defendant Jemley are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Ricci's and Jemley's willful and/or reckless violations of their obligations as officers and/or directors of Dutch Bros.

156.    Defendants Ricci and Jemley, because of their positions of control and authority as officers and/or directors of Dutch Bros, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Dutch Bros, including the wrongful acts complained of herein and in the Securities Class Action.

157.    Accordingly, Defendants Ricci and Jemley are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

158.    As such, Dutch Bros is entitled to receive all appropriate contribution or indemnification from Defendants Ricci and Jemley.

**PRAYER FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)      Declaring that Plaintiff may maintain this action on behalf of Dutch Bros, and that Plaintiff is an adequate representative of the Company;

(b)      Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Dutch Bros;

(c)      Determining and awarding to Dutch Bros the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)      Directing Dutch Bros and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Dutch Bros and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

        1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

        2. a provision to permit the shareholders of Dutch Bros to nominate at least five candidates for election to the Board;

        3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

(e)      Awarding Dutch Bros restitution from the Individual Defendants, and each of them;

(f)      Awarding Plaintiff the costs and disbursements of this action, including

reasonable attorneys' and experts' fees, costs, and expenses; and

    (g)  Granting such other and further relief as the Court may deem just and proper.

### <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury.


Dated: June 14, 2023

         **THE BROWN LAW FIRM, P.C.**

         */s/  Timothy Brown*
         Timothy Brown
         Saadia Hashmi
         767 Third Avenue, Suite 2501
         New York, NY 10017
         Telephone: (516) 922-5427
         Facsimile: (516) 344-6204
         Email: tbrown@thebrownlawfirm.net
            shashmi@thebrownlawfirm.net


         *Counsel for Plaintiff*

## VERIFICATION

I, Brennan Hudson am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __ day of 6/9/2023 , 2023.

_Brennan Hudson_
F6F4A0D6379F40C...